SHARP, Judge.
William Riley appeals from the trial court’s order holding him in contempt for failing to designate Beverly Riley, his former wife, as primary beneficiary of a life insurance policy, pursuant to a property settlement agreement entered into by the parties, which was incorporated in the parties’ final judgment of dissolution. He also appeals from that portion of the final judgment declaring him $24,000.00 in arrears on his alimony obligations on the ground that the court should have deferred ruling until after it heard evidence in support of his motion to reduce his alimony obligations. We affirm on both points.
The Rileys’ marriage was dissolved on May 18, 1985. In anticipation of the dissolution, the parties executed a document titled a “Property Settlement Agreement.” The final judgment incorporated the agreement into the judgment. It provided for a lump sum alimony award to the wife of $264,000.00, payable in decreasing monthly sums, ending with a $500.00 payment on January 1, 1996.
In addition, paragraph 7 of the agreement, entitled “Death of Husband,” recited that he had a $100,000.00 life insurance policy which designated appellee the primary beneficiary. Pursuant to this provision, he agreed to:
... keep the policy or a policy of an equal face amount in full force and effect so long as Wife lives or until his prior death. Husband shall make *1368 prompt payment of all premiums required on such policy of life insurance and shall provide Wife with confirmation that he has irrevocably designated her as the primary beneficiary thereof.
The present phase of these proceedings began when appellant filed a motion for relief from the judgment on October 17, 1985, in which he alleged fraud and overreaching on the part of his former wife in procuring his execution of the settlement agreement. He also alleged inability to make the lump sum alimony payments. Appellee responded, denying any fraud or wrongdoing, and also filed a contempt notice on the grounds that appellant had failed to comply with the alimony and life insurance provisions of the settlement, which had been incorporated in the dissolution judgment.
At the hearing on appellee’s contempt notice, the attorney for the former wife took the position that the lump sum alimony provisions could not be enforced by contempt, and therefore moved to amend the pleadings to seek a judgment for the ar-rearages. The court permitted the amendment and thereafter heard testimony from both parties concerning all of the issues involved in appellant’s effort to set aside the judgment, default in payment of the alimony, and failure to comply with the insurance provisions.
The court concluded that although appellant might have shown grounds for relief for prospective payment of the amount of alimony called for by the agreement, the arrearages of some $24,000.00 were not modifiable, and were unpaid. As to the arrearages, the court entered a judgment against appellant for the unpaid amounts. The court then found appellant in contempt for his failure to designate appellee the primary beneficiary of the life insurance policy, based on appellant’s admission that he had the policy but had changed the designation of the insurance beneficiary. The court ordered him to serve a thirty-day jail term, but it allowed him twenty days in which to purge by complying with the insurance provisions of the agreement.[1]
This case raises important questions concerning enforcement of provisions of settlement agreements incorporated into dissolution judgments through the exercise of contempt remedies. It has long been established in Florida that our Constitutional Provision, Article I, § 11, against imprisonment for debt[2] prevents a court from using contempt measures to enforce the payment of a debt owed by one spouse to the other where payment is based upon civil liability.[3]
The enforcement by contempt measures of support obligations owed to a former spouse does not violate Article I, section ll’s prohibition against imprisonment for debt, because the court is enforcing a “duty,” not a “debt.”[4] When alimony obligations established by a settlement agreement, which is incorporated into a judgment, are sought to be enforced by contempt procedures, the courts must determine to what extent the alimony provisions constitute support, and to what extent they constitute enforcement of debts pursuant to a “pure property settlement” *1369 agreement.[5] The former are enforceable by contempt,[6] but the latter are not.[7]
In this case, the trial court did not need to make this determination because appellee only sought a money judgment for the arrearages. We do not think appellant’s objection to the court’s allowance of appellee’s amendment in this regard is more than technical. Appellant was on notice the issue of arrearages would be tried and determined at the hearing. He offered no substantial proofs, other than to say he did not know the exact sums he had failed to pay. Often it may not be determined until proofs are offered at a hearing whether the nature of the payments are as support or otherwise, and in some cases (lack of ability to pay), contempt may not be appropriate. Thus, a court conducting such a hearing should have jurisdiction to enter both a judgment for arrearages and/or orders effecting contempt enforcement when appropriate.
With regard to the enforcement of the life insurance provisions by a contempt order, the resolution of the propriety of this portion of the judgment being appealed turns on whether this provision requires the payment of a debt, or the specific performance of a contract where ordinary damages are not available. Here, the provision requires the performance of an act —i.e., designation of a beneficiary — of an existing life insurance policy.
In order to purge, appellee must furnish to the court confirmation the policy is current, that appellant is irrevocably designated primary beneficiary, and that provision has been made to notify appellee of any default in the payment of premiums. Appellant is not being required to pay any monies to the insurance company, since he testified the policy was still existent and current. He is, however, being required to perform the aforesaid acts. The appellant is not held in contempt for failing to live up to an agreement he made, but rather for failing to obey a court order.
Florida Rule of Civil Procedure 1.570(c)(2) provides that courts shall have available to them the power of contempt in order to enforce their own judgments and orders. It provides:
(C) Performance of an Act. If judgment is for the performance of a specific act or contract:
(2) the court may hold the disobedient party in contempt;
As stated above, this contempt power is limited by Article I, section ll’s prohibition against imprisonment for debt,[8] and other traditional limitations on the use of contempt powers where there are alternative adequate legal remedies.[9] However, if damages are inadequate to provide a remedy, and imprisonment for debt is not involved, courts may issue injunctions, and enforce their own orders by contempt.[10]
In the context of enforcement of dissolution judgments, which involve the enforcement of settlement agreements, courts have entered contempt orders where the act being enforced did not constitute payment of a debt, and where money damages would not be appropriate. In State ex rel. *1370 Pearson v. Johnson, 334 So.2d 54 (Fla. 4th DCA 1976), the district court upheld the trial court’s enforcement by contempt of a settlement provision which required the former wife to quit-claim real estate to her former husband. Similarly, in Burke v. Burke, 336 So.2d 1237 (Fla. 4th DCA 1976), the district court approved the enforcement of settlement provisions incorporated in a dissolution judgment which required a former husband to execute documents releasing his interest in various properties.[11]
In this case, the lower court said that it did not think the violation of the insurance provision was the kind of obligation for which damages would be an appropriate remedy. Appellant testified he had no assets nor properties of value, so appellee’s possible further claim against his estate for failure to provide the $100,000.00 insurance would be fruitless. Further, ap-pellee was not entitled to the proceeds unless she outlived appellant, and her immediate right to damages was therefore necessarily contingent. Realistically, her only viable remedy was the specific enforcement of the insurance designation provision. This is the kind of act, similar to an order to convey real estate or execute a release, which is enforceable by contempt.[12] Too restrictive a view of a court’s contempt powers would render it impotent like a toothless lion, who can only roar in dismay at the disobedience of his decrees.
AFFIRMED.
ORFINGER and COBB, JJ., concur.

. The contempt order entered appears to comply in all regards with the requirements for civil contempt orders established by the Florida Courts. See In re S.L.T., 180 So.2d 374 (Fla. 2d DCA 1965); Fla.R.Crim.P. 3.840.

. “No person shall be imprisoned for debt except, in cases of fraud.” Art. I, § 11, Fla. Const.

. State ex rel. Cahn v. Mason, 148 Fla. 264, 4 So.2d 255 (Fla.1941).

.State ex rel. Krueger v. Stone, 137 Fla. 498, 188 So. 575 (Fla.1939); Bronk v. State, 43 Fla. 461, 31 So. 248 (Fla.1901); Howard v. Howard, 118 So.2d 90 (Fla. 1st DCA), cert. denied, 122 So.2d 409 (Fla.1960); 26 Fla.Jur.2d "Family Law” § 771; c.f. Lamm v. Chapman, 413 So.2d 749 (Fla.1982) (child support is a duty, not a debt).

. See Witter v. Witter, 443 So.2d 417 (Fla. 2d DCA 1984); Ball v. Ball, 440 So.2d 677 (Fla. 1st DCA 1983); Schminkey v. Schminkey, 400 So.2d 121 (Fla. 4th DCA 1981).

. Solomon v. Solomon, 149 Fla. 174, 5 So.2d 265 (Fla.1941); English v. Galbreath, 462 So.2d 876 (Fla. 2d DCA 1985); Shane v. Shane, 444 So.2d 86 (Fla. 3rd DCA 1984).

. Ball v. Ball, 440 So.2d 677 (Fla. 1st DCA 1983); Woods v. Butter, 418 So.2d 295 (Fla. 3rd DCA 1982); Schminkey v. Schminkey, 400 So.2d 121 (Fla. 4th DCA 1981); Benson v. Benson, 369 So.2d 99 (Fla. 4th DCA 1979); Burke v. Burke, 336 So.2d 1237 (Fla. 4th DCA 1976); Howell v. Howell, 207 So.2d 507 (Fla. 2d DCA 1968); but see Cox v. Cox, 462 So.2d 122 (Fla. 2d DCA 1985).

. See Tabas v. Hudson, 175 So.2d 224 (Fla. 3rd DCA), appeal dismissed, 183 So.2d 209 (Fla.1965), cert. denied, 383 U.S. 969, 86 S.Ct. 1273, 16 L.Ed.2d 308 (1966).

. Wallace v. Townsell, 471 So.2d 662 (Fla. 5th DCA 1985); cf. Gilman v. Altman, 300 So.2d 703 (Fla. 3rd DCA 1974), cert. denied, 314 So.2d 583 (Fla.1975).

. Tabas v. Hudson, 175 So.2d 224 (Fla. 3rd DCA), appeal dismissed, 183 So.2d 209 (Fla.1965), cert. denied, 383 U.S. 969, 86 S.Ct. 1273, 16 L.Ed.2d 308 (1966); Pearce v. Pearce, 97 So.2d 329 (Fla. 2d DCA 1957).

. See also Firestone v. Ferguson, 372 So.2d 490 (Fla. 3rd DCA 1979) (former wife required to execute contract for sale of Kentucky real estate); Collins v. Collins, 179 So.2d 231 (Fla. 2d DCA 1965), cert. denied, 188 So.2d 316 (Fla. 1966) (contempt enforcement of former husband’s obligation under settlement agreement to deliver personal property and satisfy a mortgage upheld).

. Homer Clark, The Law of Domestic Relations in the United States, at 467 (1968); See Note, “The Use of Contempt of Court to Enforce Florida Divorce Decrees, 6 Nova L.J. 313 (1982)."