HOBSON, Judge.
This is an appeal by appellant Jim Fair from a judgment holding him in direct criminal contempt under Rule 1.830 R.Cr. P., 33 F.S.A., (now Rule 3.830) and sentencing him to sixty (60) days in the Hills-borough County Jail.
The facts leading up to the judgment and sentence appealed arise out of an original action brought by the appellant against the appellees for slander and libel. In that action appellant in pro. per. filed a pleading designated “Notice of Dismissal” which stated in part as follows:
“Comes now the plaintiff, Jim Fair, in proper person, and files this his Notice of Dismissal, and as grounds therefor shows:
1. That he has absolute right to dismiss without prejudice.
2. That necessity for exercise of said right maintains by plaintiff's inability to receive merited justice from the trial judge to whom the case is assigned as:
A. Said judge has long been a courthouse fixture never known to oppose corrupt or crooked practices long existing and existing now in or among the Courthouse Gang or its cronies.
B. Said judge was long closely linked with the Spicola family in business and is well aware of one Spicola, a public official, being indicted a dozen times by the Grand Jury and of said Spicola’s negligible ethics; and is well aware of another Spicola viciously abusing his power for conducting an unnecessary, uncalled for Spanish Inquisition as to plaintiff and is well aware of another Spicola being opposed to plaintiff as a candidate for State Senate seat.
C. Said judge has long known that the defendants’ law firm represents Mafia-linlced clients, and that its leading lawyer, Gonzalez has long associated with Ragano, a Mafia mouth-piece and ‘court fixer.’
D. Said judge knows hereby that one defendant, Leto, for a long period was *329 close to one Bedami, a rubbed-out underworld figure.
E. Said judge has long known that one defendant, (de Stefano) Lo Scalzo, has been a part of a large courthouse family, one of whom was unethically profiting off Nuccio connections, and another of whom was unethically seeking to get in on handling $80,000,000.00 a year by running for the School Board while serving on the Election Board.
F. Said judge, neither as a lawyer nor as a taxpayer paid public official, to the knowledge of plaintiff, has ever sought to help the people against the powers ruthlessly opposing them.”
The original presiding judge at the time the “Notice of Dismissal” was filed was replaced by the Chief Justice of our Supreme Court who assigned a circuit judge from another circuit. The assigned judge issued a rule to show cause directing the appellant to appear before him and then and there show cause why he should not be held in contempt and punished accordingly.
The return date of the first rule was continued on motion by counsel retained by appellant. Said counsel represented appellant throughout the remainder of this cause (including this appeal). Appellant filed a motion for statement of particulars, motion for jury trial and a motion to dismiss, together with his answer.
A state’s attorney from yet another circuit was appointed to protect the interest of the court and he filed a traverse.
A hearing was held on the motions, at which time the court denied the same and held that the proceeding was for direct criminal contempt.
Appellant petitioned our Supreme Court for a writ'of certiorari and also filed an appeal with the same court. Our Supreme Court denied the petition for writ of cer-tiorari and dismissed the appeal. Thereafter appellant petitioned the Supreme Court of the United States for a writ of certiora-ri, which was denied.
Finally, a hearing was held before the trial court, at which time the appellant renewed all of his prior motions, which were denied. Thereafter appellant declined to present anything in his behalf. Thereupon the court entered the judgment and sentence.
Appellant maintains that he was denied his rights under the First, Sixth and Fourteenth Amendments to the Constitution of the United States. He further maintains that the court erred in holding that it was a direct criminal contempt rather than an indirect criminal contempt and lastly that his notice of dismissal filed in pro per was in reality a motion or suggestion to disqualify the trial judge and as such the contemptuous statements contained therein are privileged.
We first consider appellant’s assertion that the court erred in ruling that the facts established that he was in direct contempt.
It was held in State v. Sullivan, Fla.1946, 157 Fla. 496, 26 So.2d 509, that pleadings which contain contemptuous statements when filed with the clerk of the court constitute direct contempt. Notwithstanding this holding by the trial court, the appellant was given all of the necessary safeguards given him under Rule 1.840 (now Rule 3.840) for indirect contempt.
We next consider whether or not appellant’s rights under the First Amendment to the Constitution of the United States were violated.
As to the First Amendment, it has been held in Spencer v. Dixon, 290 F.Supp. 531 (D.C.1968) that such statements as contained in appellant’s “Notice of Dismissal” when filed with the court are not protected by the First Amendment. See also Dawkins v. State, Fla.App. 1968, 208 So.2d 119; Fisher v. Pace, 336 U.S. 155, 69 S.Ct. *330 425, 93 L.Ed. 569; In re Sawyer, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473.
All of the cases cited by appellant as authority that his First Amendment rights were violated are cases in which the statements were made outside of the court and not contained in any pleading filed with the court.
Appellant’s “Notice of Dismissal” stated, as set forth above, that he was unable to receive merited justice from the trial judge to whom the case was assigned for the various reasons stated, said reasons being those for which he was held in contempt. Appellant at that time was acting in proper person and in effect was attempting in his own mind to disqualify the trial judge.
The State maintains that appellant had an absolute right as a matter of law to dismiss the lawsuit he had filed without specifying any grounds therefor. In this manner the State attempts to distinguish the privilege doctrine as enunciated in Myers v. Hodges, 1907, 53 Fla. 197, 44 So. 357, which held that such defamatory statements to be absolutely privileged must be connected with or relevant or material to the cause in hand or subject of inquiry.
We hold that the grounds as stated in 2. A. through F. quoted above should in all good conscience be treated as grounds for suggestion of disqualification of the trial judge and are therefore privileged. Giblin v. State, 1947, 158 Fla. 490, 29 So.2d 18.
Having, reached this conclusion as to the contemptuous statements being privileged, the judgment and' sentence must be reversed.
Since reversal is required in this appeal on the “privilege” as set out above, it is not necessary to consider appellant’s contention that he was denied the right to trial by jury under the Florida Constitution and the Sixth Amendment to the United States Constitution made applicable to the states by the Fourteenth Amendment. The holding in Bloom v. Ill., 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, concerning criminal contempts and the right to trial by jury involving such contempts, should be noted, however, for the benefit of the Bench and Bar.
The judgment and sentence are reversed.
MANN, C. J, and PIERCE, J. (Ret.), concur.